UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- x

JOSE ROSA, EDUARDO ROMERO       :
BARRON, and DONIQUA ESSAMOND    :       REPORT AND
PHINAZEE, on behalf of themselves and all   :       RECOMMENDATION
others similarly situated,                     :
                                        :       18-CV-06915 (FB) (PK)
                     Plaintiffs,     :
                                        :
        -against-             :
                                        :
LA OFICINA OF QUEENS, INC.,       :
HEAVENS ENTERTAINMENT, INC.,    :
ANGELS OF THE WORLD, INC.,       :
GEORGE STOUPAS, and GUS "DOE,"   :
                                        :
                   Defendants.    :

---------------------------------------------------------- :
                                        x

**Peggy Kuo, United States Magistrate Judge:**

Jose Rosa ("Rosa"), Eduardo Romero Barron ("Plaintiff" or "Barron"), and Doniqua Essamond Phinazee ("Phinazee") (collectively, "Plaintiffs"), brought this action against La Oficina of Queens, Inc. ("La Oficina"), Heavens Entertainment, Inc. ("Heavens"), Angels of the World, Inc. ("Angels"), George Stoupas ("Stoupas"), and Gus "Doe" for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL") N.Y. Lab. Law §§ 650 *et seq.* (*See* "Compl.," Dkt. 1.) Barron moved for default judgment against La Oficina, Heavens, Angels, and Stoupas (collectively, "Defendants"). ("Motion," Dkt. 52.)[1]

The Honorable Frederic Block referred the Motion to me for a report and recommendation. For the reasons stated herein, I respectfully recommend that the Motion be granted in part and denied in part, as set forth below.

---

[1] The Complaint also asserted allegations related to a collective or class action, but the Motion only seeks default judgment for Barron.

**BACKGROUND**

I.    **Factual Background**

The following allegations in the Complaint ("Compl.," Dkt. 1) are accepted as true for purposes of the Motion.  *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (in light of defendant's default, a court is required to accept all of plaintiff's factual allegations as true and draw all reasonable inferences in its favor).  In addition, I rely on facts set forth in the Declaration of Amit Kumar, Esq. ("Kumar Decl.," Dkt. 52-2), the Declaration of Eduardo Romero Barron ("Barron Decl.," Ex. 3 to the Kumar Decl., Dkt. 52-11), Plaintiff's testimony at the August 22, 2022 Inquest ("Inquest Tr.," Dkt. 59), the transcript from the February 9, 2022 Status Conference ("Conf. Tr.," Dkt. 60), and Plaintiff's revised damage calculations.  ("Damages," Dkt. 58-1.)

A.    *Defendants*

La Oficina, Heavens, and Angels (the "Clubs") are gentlemen's clubs in Queens, New York. (Compl. ¶¶ 3, 38, 49, 60; Barron Decl. ¶ 8.)  Each club achieved at least $500,000 in annual revenue for calendar years 2015 through 2018.  (Compl. ¶¶ 45-48, 56-59, 67-70.)  The Clubs "share[d] and interchange[d] employees," including Plaintiff and other busboys.  (Compl. ¶ 31; Barron Decl. ¶ 26.) In aggregate, the Clubs employed over 100 busboys, bartenders, and entertainers.  (Compl. ¶ 165; Inquest Tr. 11:9-13:2.)

Stoupas owned, operated, and conducted business on behalf of the Clubs during the period of Barron's employment.  (Compl. ¶¶ 2-3; Barron Decl. ¶ 7.)  Stoupas is listed with the New York State Department of State as La Oficina's registered agent, and as Principal of the Clubs with the New York State Liquor Authority.  (Compl. ¶¶ 95-98.)  He bargained on behalf of the Clubs, collectively, in contract negotiations.  (Compl. ¶ 102.)

While involved in the Clubs' commercial activities, Stoupas was also "actively involved in managing [the Clubs'] day to day operations."  (Compl. ¶¶ 85-87; Kumar Decl. ¶¶ 72-74.)  Stoupas

2

controlled the Clubs' personnel decisions, including the power to hire and fire, set wages, and set forth the conditions of employment. (Compl. ¶¶ 79-81, 99.) Stoupas managed the Clubs' payroll and had the power to retain time and wage records. (Compl. ¶¶ 82-84.) Stoupas "supervise[d] the employees at each of [the Clubs] by telling them what duties to perform and in what order to complete said duties." (Compl. ¶ 103.)

### B.    Plaintiff's Allegations

Barron was employed as a busboy at the Clubs from 2004 through July 17, 2018. (Compl. ¶ 19; Barron Decl. ¶¶ 2-10; Kumar Decl. ¶¶ 3, 27; Inquest Tr. 3:18-3:24, 10:5.) As part of his job, Barron cleaned the Clubs, bought supplies, prepared hookahs, and cooked and delivered food. (Compl. ¶¶ 6, 9; Inquest Tr. 9:22-9:25, 10:14-10:18, 14:11-14:12.) He was not permitted to take breaks during his shifts, and, if he did, the break lasted no more than twenty minutes. (Barron Decl. ¶ 13; Inquest Tr. 16:5-8; *see* Compl. ¶ 184.)

From 2004 through October 2017, Barron worked at La Oficina. (Barron Decl. ¶ 10; Inquest Tr. 17:17-17:21.) From December 2012 through October 2017, Barron was also "routinely" assigned shifts at Heavens.[2] (Barron Decl. ¶ 10; Inquest Tr. 5:2-5:8, 17:17-17:21.) From the beginning of his employment through October 2017, he worked 12-hour shifts from 5:30 p.m. until 5:30 a.m. and was paid $100 per shift. He worked six days per week, for a total of 72 hours per week. (Compl. ¶¶ 208, 212; Barron Decl. ¶¶ 12, 14; Inquest Tr. 8:11-8:14, 18:5-18:13.)

From November 2017 through July 17, 2018, Barron worked at Angels. (Barron Decl. ¶ 10; Inquest Tr. 4:16-4:18, 17:22-18:4.) He worked 10-hour shifts from 7:00 p.m. to 5:00 a.m. and was paid $80 per shift. (Inquest Tr. 19:25-20:5.) He worked four or five days per week, working four days

---

[2] Barron's "routine" reassignments "occurred at least once a week … at the orders of either Defendants Stoupas or Gus." (Barron Decl. ¶ 11.) Barron's reassignments were directed by management as they purchased more clubs. (Tr. 15:4-16:1.)

about twice as frequently as five days.[3]  (Inquest Tr. 21:2-21:11.)

   Defendants told Barron that "busboys did not receive tips" at the Clubs.  (Compl. ¶ 221; Barron Decl. ¶ 23.)  Although he participated in a tip pool, Defendants retained his tips and Barron did not receive tips during his shifts at Heavens or La Oficina.  (Compl. ¶¶ 218, 222; Barron Decl. ¶¶ 15, 22; Inquest Tr. 9:15-9:18.)  The bartenders at Angels shared tips with Barron at the end of his shifts (Inquest Tr. 6:18-6:24, 13:8-13:14, 19:19-24), but Barron was told that because he received tips, his pay was reduced from $100 to $80 per day.  (Inquest Tr. 7:19-8:3.)

   Barron was not paid overtime for any hours worked in excess of 40 hours per week.  (Compl. ¶ 215; Barron Decl. ¶ 18.)  He did not receive any wage statements, wage notices, notices of hours, or records of his earned wages or hours worked during his employment.  (Compl. ¶¶ 223-226; Inquest Tr. 8:4-8:10.)  He also did not receive spread of hours pay for any shifts he worked over ten hours. (Compl. ¶ 207.)

## II.   Relevant Procedural Background

   Plaintiffs filed the Complaint on December 5, 2018.  (Dkt. 1.)  It asserts causes of action for, *inter alia*, failure to pay minimum and overtime wages under the FLSA in violation of 29 U.S.C. §§ 201 *et seq.* (Compl. ¶¶ 251-266), failure to pay minimum and overtime wages and spread of hours pay in violation of NYLL §§ 650 *et seq.* (*id.* ¶¶ 273-290), unlawful deduction from wages in violation of NYLL § 196-d (*id.* ¶¶ 291-299), failure to provide proper annual wage notices in violation of NYLL § 195(1) (*id.* ¶¶ 306-309), and failure to provide proper wage statements in violation of NYLL § 195(3) (*id.* ¶¶ 310-313).

   Plaintiffs effectuated service on La Oficina, Heavens, and Angels on December 12, 2018 by

---

[3] The Complaint and Barron's Declaration state that from November 1, 2017 through March 31, 2018, Barron worked 12 hours per day, seven days per week, and was paid $100 per day, and from April 1, 2018, through July 17, 2018, Barron worked 11 hours per day, four days per week, and was paid $80 per day.  (Compl. ¶¶ 209-210, 212-213; Barron Decl. ¶¶ 12, 14.)  Barron clarified at the August 22, 2022 Inquest that he worked four to five days per week, from 7:00 p.m. through 5:00 a.m., and was paid $80 per day, throughout that entire period.

delivering a copy of the Summons and Complaint to the New York Secretary of State (Dkts. 8, 9, 10) and on Stoupas on December 26, 2018 by delivering a copy of the Summons and Complaint to Stoupas personally. (Dkts. 8, 9, 10, 11.) Defendants filed an Answer on March 1, 2019.[4] (Dkt. 13.)

Counsel for Defendants filed a Motion to Withdraw as Attorney on October 21, 2020 (Dkt. 33), which the Court granted. (Minute Order dated Nov. 12, 2020.) Stoupas was present at the hearing on the motion and was given a deadline of February 11, 2021 to obtain new counsel. (*Id.*) The Court informed him that La Oficina, Heavens, and Angels may only appear through licensed counsel and that they risked default if they did not do so. (*Id.*)

Defendants failed to appear at the February 11, 2021 status conference and were warned that failure to appear at the next conference could result in entries of default against them. (Minute Order dated February 11, 2021.) Defendants again failed to appear at the March 17, 2021 status conference and were warned that their failure to appear at the next status conference would be considered a default in the matter. (Minute Order dated Mar. 17, 2021.) Defendants failed to appear at the next status conference. (Minute Order dated April 9, 2021.)

Plaintiffs requested a Certificate of Default against Defendants (Dkt. 39), which the Clerk of Court entered on April 23, 2021. (Dkt. 41.)

The Court held a motion hearing and scheduling conference on February 8, 2022, at which Stoupas appeared and stated that he "may not have received notice of" the previous conferences. (Minute Order dated Feb. 9, 2022.) The Court explained to Stoupas that if he wished to continue litigation instead of defaulting, he could request to vacate the default, but that the corporate defendants could only request to vacate the default through counsel. (*Id.*) Stoupas stated that he would not defend against Plaintiffs' claims. (*Id.*)

---

[4] The Answer was also filed on behalf of Defendant Gus "Doe," later identified as Gus Orellana (Minute Order dated Nov. 12, 2020), but he has not appeared since counsel was permitted to withdraw, and Plaintiff does not seek default judgment against him.

Stoupas appeared at the March 14, 2022 Inquest and informed the Court that he was seeking counsel. (Minute Order, Mar. 14, 2022.) The Court set a May 10, 2022 deadline for any new defense counsel to file a notice of appearance. (*Id.*) No counsel filed a notice of appearance.

On June 24, 2022, Barron filed the Motion.[5] (Dkt. 52.) The Court held an Inquest on August 22, 2022. Barron filed revised damages calculations on September 23, 2022. (Dkt. 58.)

## DISCUSSION

## III.    Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment. First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default. Fed. R. Civ. P. 55(a). The plaintiff may then move the court for an entry of default judgment. Fed. R. Civ. P. 55(b)(2). A plaintiff is "not entitled to a default judgment as a matter of right" "just because a party is in default." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). A plaintiff must establish compliance with the procedural requirements of Local Civ. Rules 7.1 and 55.2.

"Where a party initially appears and answers, but subsequently fails to continue in the case, a default judgment can still issue" if the party fails to continue defending the case. *Mister Softee, Inc. v. Tsirkos*, No. 14 CV-1975 (LTS) (RLE), 2015 WL 7458619, at *3 (S.D.N.Y. Nov. 23, 2015); *see also Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 454 (2d Cir. 2013); *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011); *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1310 (2d Cir. 1991). A corporate defendant also defaults if it does not appear through licensed counsel. *See Rowland v. California Men's Colony*, 506 U.S. 194, 201-02 (1993) ("It has been the law for the better part of two centuries…that a corporation may appear in the federal courts only through licensed counsel.").

---

[5] Plaintiffs filed a prior Motion for Default Judgment on August 2, 2021 on behalf of Barron, Rosa, and Phinazee. (Dkt. 42.) That motion was voluntarily withdrawn after Rosa and Phinazee stopped communicating with their counsel. (Minute Order dated Mar. 14, 2022; Electronic Order dated Mar. 18, 2022.)

While "a party's default is deemed to constitute a concession of all well pleaded allegations of liability," *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), the court must determine whether plaintiff's "allegations establish [defendants'] liability as a matter of law." *Finkel*, 577 F.3d at 84. A default is also "not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-06476 (ARR)(PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *R&R adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020). The court may also conduct a hearing to determine damages. Fed. R. Civ. P. 55(b)(2).

In the context of a motion for default judgment on FLSA and NYLL claims, "the plaintiff's recollection and estimates of hours worked are presumed to be correct." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012); *see also Santillan v. Henao*, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011) ("[I]n the absence of rebuttal by defendants, or where the employer has defaulted, as here, the employee's recollection and estimates of hours worked are presumed to be correct." (quotations, citations, and alterations omitted)).

A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established." *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

## IV.    Jurisdiction and Default

The Court has original subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

Although Defendants answered and appeared initially through counsel, they stopped appearing and defending in this action after counsel was permitted to withdraw. The Clubs, as

corporate defendants, have not appeared since the Court granted their former counsel's Motion to Withdraw on November 12, 2020. The Court gave Defendants three opportunities to attend telephone conferences on February 11, 2021, March 17, 2021, and April 9, 2021, but they failed to appear. Stoupas did appear after a Certificate of Default was entered against him, but he informed the Court that he would not defend against Plaintiffs' claims. (Minute Order dated Feb. 9, 2022.) Thus, Plaintiff may request, and the Court may grant, default judgment against Defendants. *Mister Softee, Inc.,* 2015 WL 7458619, at *3.

## V.     Procedural Compliance with Local Civil Rules 7.1 and 55.2

As part of the Motion and in compliance with the Local Civil Rules, Plaintiff included a Notice of Motion (Dkt. 52), *see* Local Civil Rule 7.1(a)(1); a memorandum of law (Dkt. 52-1), *see* Local Civil Rule 7.1(a)(2); a copy of the Clerk's certificate of default (Dkt. 52-10), *see* Local Civil Rule 55.2(b)(1); a copy of the Complaint (Dkt. 52-4), *see* Local Civil Rule 55.2(b)(2); proof of service of the Complaint (Dkt. 52-5 *et seq.*), *see* Local Civil Rule 55.1(b)(3); a proposed judgment (Dkt. 52-13), *see* Local Civil Rule 55.2(b)(3); and proof of mailing the Motion to Defendants at their last known addresses (Dkt. 52-14), *see* Local Civil Rule 55.2(c).

Plaintiffs did not submit an affirmation that Stoupas is not an infant, in the military, or an incompetent person in compliance with Local Rule 55.1(b)(1). However, Stoupas affirmed that he is not in the military (Dkt. 11), and his personal appearances on his own behalf demonstrate that he is not an infant or incompetent. Accordingly, Plaintiff's non-compliance is excused.

## VI.    Liability under the FLSA and NYLL

### A.    Statute of Limitations

The FLSA and the NYLL have different statutes of limitations. The FLSA statute of limitations is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). "When a

defendant defaults, the violation is considered 'willful' and the three-year statute of limitations applies." *Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089 (KAM)(SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) (citing *Blue v. Finest Guard Servs., Inc.*, No. 09-CV-133 (ARR), 2010 WL 2927398 (E.D.N.Y. June 24, 2010)). "The statute of limitations starts to run when the employee begins to work for the employer." *Id.* (citation omitted). Under the NYLL, the statute of limitations is six years. *See* NYLL §§ 198(3), 663(3).

Plaintiff commenced this action on December 5, 2018. Because Defendants have defaulted, the violations are willful and the three-year FLSA statute of limitations applies. Plaintiff can recover under the FLSA for any claims that accrued starting on December 5, 2015. Under the six-year NYLL statute of limitations, Plaintiff may recover for any claims that accrued starting on December 5, 2012.

## B.    Employment Relationship Under the FLSA

The FLSA is to be "construed [ ] liberally" because its "broad coverage is essential to accomplish the goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency." *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985) (quotation and citations omitted). To plead a cause of action under the FLSA, a plaintiff must establish that: (1) defendants are employers subject to the FLSA; (2) plaintiff is an employee within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA. *See Rowe v. CC Rest. & Bakery, Inc.,* No. 17-CV-01423 (CBA)(PK), 2019 WL 4395158, at *4 (E.D.N.Y. Aug. 15, 2019), *R&R adopted*, 2019 WL 4393987 (E.D.N.Y. Sept. 13, 2019).

### 1.    Whether Defendants are Employers

The FLSA broadly describes an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and does not define the term "'employer' in the first instance." *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013). "[E]mployment for FLSA purposes [is] a flexible concept to be determined on a case-by-case basis by

review of the totality of the circumstances." *Id.* at 104 (quoting *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008)). "[A]n employee may be jointly employed by two or more employers," and "[i]n such cases, joint employers are subject to joint and several liability for FLSA violations." *Michalow v. E. Coast Restoration & Consulting Corp.*, No. 09-CV-5475 (SLT) (RML), 2017 WL 9400690, at *4 (E.D.N.Y. July 11, 2017), *R&R adopted*, 2018 WL 1559762 (E.D.N.Y. Mar. 31, 2018).

A defendant that meets the criteria for either individual or enterprise coverage is an employer under the FLSA. *See Rowe*, 2019 WL 4395158, at *4. The individual coverage test considers the "employment actions of each" plaintiff to determine whether "the employees themselves are 'engaged in commerce.'" *Id.* Even if the plaintiffs are not themselves engaged in commerce, a defendant may meet the enterprise coverage test if the defendant has employees engaged in commerce or in the production of goods for commerce, "or [ ] has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and ... whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i-ii); *see also Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015). "Commerce" is "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). Even local activities may meet this test if "an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) (*quoting Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998)).

Plaintiff alleges that the Clubs each achieved at least $500,000 in annual revenue for calendar years 2015 through 2018 (Compl. ¶¶ 45-48, 56-59, 67-70) and that Barron regularly handled products which had been moved in commerce in the course of his duties. (Compl. ¶ 18.) Although Plaintiff does not specify which products he handled had been moved in commerce, his allegations are

sufficient to establish that the Clubs were employers required to comply with the FLSA's minimum wage and overtime requirements. *See Galicia v. 63-68 Diner Corp.*, No. 13-CV-3689 (PKC), 2015 WL 1469279, at *2 (E.D.N.Y. Mar. 30, 2015) (inferring that a diner's busboy "handle[d] goods or materials that have moved in interstate commerce"); *see also Rocha v. Bakhter Afghan Hall Kababs, Inc.*, 44 F. Supp. 3d 337, 346 (E.D.N.Y 2014) (collecting cases).

With respect to whether an individual is an employer, "[t]he underlying inquiry in determining 'employer' status is whether the individual possessed operational control over employees …." *Tapia v. BLCH 3rd Ave. LLC*, 906 F.3d 58, 61 (2d Cir. 2018) (per curiam). "[T]o be an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." *Irizarry*, 722 F.3d at 109. "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.* at 110. The analysis of whether an individual is an "employer" is guided by the 'economic realities' test set forth in *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir. 1984). *Id.* at 104-05. The factors that the Court may consider include "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Carter*, 735 F.2d at 12 (quoting *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)). However, "[t]he 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive." *Irizarry*, 722 F.3d at 106 (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)).

The FLSA "does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees. Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control 'do not diminish the significance of its existence.'" *Id.*

(quoting *Donovan v. Janitorial Servs., Inc.*, 672 F.2d 528, 531 (5th Cir. 1982)) (alteration omitted).

Stoupas owned and operated the Clubs and was "actively involved in managing the day to day operations" during the period of Plaintiff's employment. (Compl. ¶¶ 2-3, 6, 85-87.) Stoupas had the power to hire and fire employees, to set their wages, and to control the conditions of their employment. (*Id.* ¶¶ 79-81.) He had power over payroll decisions, including the power to maintain time and wage records (*id.* ¶¶ 82-84), even if he did not actually maintain such records. Because these allegations closely track the *Carter* factors, they establish that Stoupas was Plaintiff's employer.

### 2. Whether Plaintiff was an Employee

An "employee" under the FLSA is likewise broadly defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Plaintiff was employed by Defendants from 2004 through 2018. (Compl. ¶¶ 1, 3, 6, 19; Barron Decl. ¶¶ 2-10; Kumar Decl. ¶¶ 3, 27; Pl. Mem. at 5.) Thus, Plaintiff was an employee under the FLSA.

### 3. Whether any FLSA exemption applies

Finally, Plaintiff must show that he is not exempt from the FLSA's protections. *Fermin*, 93 F. Supp. 3d at 32. "Section 13 of the FLSA contains a litany of exemptions to the minimum wage requirement." *Chen v. Major League Baseball*, 6 F. Supp. 3d 449, 454 (S.D.N.Y. 2014). For example, "bona fide 'professional' employees, a group that includes employees compensated on a salary basis at a rate of not less than $455.00 per week and whose primary duties require advance knowledge in a field of science or learning" are not covered by the FLSA. *Ghosh v. Neurological Servs. of Queens*, No. 13-CV-1113 (ILG)(CLP), 2015 WL 431807, at *3 (E.D.N.Y. Feb. 3, 2015) (quoting 29 U.S.C. § 213(a)(1)).

As a busboy, Plaintiff is not exempt from the FLSA's protection. *See generally Fermin*, 93 F. Supp. 3d at 32 (explaining that jobs such as "waiter, kitchen helper/food preparer, cook and dishwasher all constitute non-exempt employment under the FLSA").

### C.     Employment Relationship Under the NYLL

To prevail on an NYLL claim, Plaintiff must establish that his employment relationship with Defendants falls within the NYLL, which applies to "any person employed for hire by an employer in any employment." NYLL § 190. "Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." *Garcia v. Badyna*, No. 13-CV-4021 (RRM)(CLP), 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014). Otherwise, the NYLL's definition of "employer" is "nearly identical" to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same factors. *See Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV)(VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016) (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status), *R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016).

As the NYLL and FLSA definitions of "employer" are coextensive, *see Fermin*, 93 F. Supp. 3d at 37, Defendants are Plaintiff's employers within the meaning of the NYLL, and the NYLL applies to the instant dispute.

### D.     Whether Defendants are Joint Employers

Plaintiff argues that Defendants were his joint employers. (Pl. Mem. at 6-7.) Courts use two alternative tests to assess whether separate defendants acting in concert may be jointly liable for violations of labor laws: the "single integrated enterprise test;" or the "joint employer test." *See Galicia v. Ice Cream House on Bedford Ave LLC*, No. 16-CV-6738 (CBA)(PK), 2017 WL 6733985, at *2 (E.D.N.Y. Oct. 17, 2017), *R&R adopted*, 2017 WL 6759299 (E.D.N.Y. Dec. 29, 2017).

The single integrated enterprise test "assesses whether nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a single employer." *Galicia*, 2017 WL 6733985, at *2 (quotation and citation omitted). Under the single integrated enterprise test, "courts consider (1) interrelation of operations, (2) centralized control of labor

relations, (3) common management, and (4) common ownership or financial control." *Apolinar v. R.J. 49 Rest., LLC*, No. 15-CV-8655 (KBF), 2016 WL 2903278, at *4 (S.D.N.Y. May 18, 2016) (quotation and citation omitted).

The joint employer test considers "'the circumstances of the whole [employment] activity' viewed in light of the 'economic reality.'" *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 71 (2d Cir. 2003) (citations omitted). Courts often rely on the four-factor "economic realities" analysis, which "ask[s] whether multiple employers together (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Galicia*, 2017 WL 6733985, at *2 (quotation and citation omitted). Although the economic realities test "has been distilled into a nonexclusive and overlapping set of factors," courts must look "beyond a defendant's formal control over the physical performance of plaintiff's work" and consider the "broad … language in the statute." *See Zheng*, 335 F.3d at 75-76.

Defendants are joint employers under the single integrated test. The Clubs were all owned, operated, and managed by Stoupas (Compl. ¶¶ 2-3, 6, 79-81, 85-87; Kumar Decl. ¶¶ 72-74), who had centralized power to hire and fire employees, to set their wages, and to control the conditions of their employment across all three Clubs. Throughout his employment, Plaintiff was assigned shifts at all three of the Clubs, and was told that, no matter which club he worked at, he would receive the same compensation. (Barron Decl. ¶¶ 10, 11, 25.)

### E.   *Minimum Wage Claims*

Under both the FLSA and the NYLL, employees must be paid at least the minimum hourly wage for each hour that they work. 29 U.S.C. § 206; NYLL § 652. "The federal minimum wage does not preempt the state minimum wage, and a plaintiff may recover under whatever statute provides the highest measure of damages." *Wicaksono v. XYZ 48 Corp.*, No. 10-CV-3635 (LAK)(JCF), 2011 WL

2022644, at *3 (S.D.N.Y. May 2, 2011) (citations omitted), *R&R adopted*, 2011 WL 2038973 (S.D.N.Y. May 24, 2011); *see also* 29 U.S.C. § 218(a) ("No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter . . . .").

The federal minimum wage has been $7.25 since July 24, 2009. *See* U.S. Dep't of Labor, *History of Federal Minimum Wage Rates Under the Fair Labor Standards Act, 1938-2009*, https://www.dol.gov/agencies/whd/minimum-wage/history/chart (last visited Mar. 14, 2023).

"For purposes of determining whether Plaintiff[] w[as] paid the prevailing minimum wage, the Court must determine [his] regular hourly rate of pay." *Perez Campos v. Quentin Mkt. Corp.*, No. 16-CV-05303 (DLI)(RER), 2018 WL 9945754, at *4 (E.D.N.Y. Oct. 17, 2018). Under the FLSA, "[t]he regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109; *see also* 29 C.F.R. § 778.325.

From November 1, 2017 through July 17, 2018, Plaintiff worked 10-hour shifts four or five days per week, working four days about twice as frequently as five days. Plaintiff thus worked 40 hours per week for about two thirds of this time period and 50 hours per week for about one third of this time period. When he worked a 40-hour workweek Plaintiff was paid $320.00 ($80 per shift for four shifts) and, when he worked a 50-hour workweek Plaintiff was paid $400.00 ($80 per shift for five shifts).

The following table shows Plaintiff's regular rate of pay under the FLSA during the applicable time periods:

| Time Period | | Federal Minimum Wage | Weekly Wage Paid | Hours Per Week Worked | Regular Rate of Pay |
|---|---|---|---|---|---|
| 12/05/15 - 10/31/17 | | $7.25 | $600.00 | 72 | $8.33 |
| 11/01/17 - 07/17/18 | | | | | |
| | Four-day weeks: | $7.25 | $320.00 | 40 | $8.00 |
| | Five-day weeks: | | $400.00 | 50 | $8.00 |

Because Plaintiff was not paid less than $7.25 during the statutory period, he has failed to establish Defendants' liability for failure to pay minimum wages under the FLSA.

From January 1, 2007 until December 30, 2013, the New York minimum wage was $7.15; from December 31, 2013 until December 30, 2014, $8.00; from December 31, 2014 until December 30, 2015, $8.75; and from December 31, 2015 until December 30, 2016, $9.00. NYLL § 652(1). From December 31, 2016 until December 30, 2017, the minimum wage for "large employers," defined as employers with 11 or more employees, was $11.00. NYLL § 652(1)(a)(i). From December 31, 2017 to December 30, 2018, the minimum wage for large employers was $13.00. Plaintiff alleges that Defendants collectively employed at least 100 employees, qualifying them as a "large employer." (Compl. ¶ 165; Inquest Tr. 11:9-13:2.)

As a busboy, Plaintiff is subject to New York's Hospitality Industry Wage Order ("Hospitality Wage Order"). *See* 12 N.Y.C.R.R. §§ 146-3.1 ("The term hospitality industry includes any restaurant or hotel…"); *id.* § 146-3.4 ("A food service worker . . . include[s] . . . bussing personnel"). *See also De Oliveira v. Scores Holding Company Inc.*, No. 18-Civ-06769 (GBD), 2022 WL 874989, at *1, *3, n.8 (S.D.N.Y. Mar. 24, 2022) (treating cocktail waitress at adult entertainment establishment as a food service worker). "Under the [Hospitality] Wage Order, an employee's hourly regular rate of pay shall be calculated by dividing the employee's total weekly earnings [] by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." *Juan v. Son of Polisi, Inc.*, No. 19-CV-04662 (LDH)(PK), 2021 WL 2179344, at *8 (quotation and citations omitted). Plaintiff worked either 40, 50, or 72 hours per week during the relevant period of his employment. His regular hourly

rate of pay during the statutory period is thus calculated by dividing his weekly pay by 40 hours.

The following table shows Plaintiff's regular rate of pay and, whenever that rate of pay is lower than the New York minimum wage, the difference between the regular rate of pay and the New York minimum wage:

| Time Period | New York Minimum Wage | Weekly Wage Paid | Applicable Hours Per Week | Effective Regular Rate of Pay | Difference Between Minimum Wage & Regular Rate of Pay |
|---|---|---|---|---|---|
| 12/05/12 - 12/30/13 | $7.15 | $600.00 | 40 | $15.00 | N/A |
| 12/31/13 - 12/30/14 | $8.00 | $600.00 | 40 | $15.00 | N/A |
| 12/31/14 - 12/30/15 | $8.75 | $600.00 | 40 | $15.00 | N/A |
| 12/31/15 - 12/30/16 | $9.00 | $600.00 | 40 | $15.00 | N/A |
| 12/31/16 - 10/31/17 | $11.00 | $600.00 | 40 | $15.00 | N/A |
| 11/01/17 - 12/30/17 | | | | | |
| Four-day weeks: | $11.00 | $320.00 | 40 | $8.00 | $3.00 |
| Five-day weeks: | | $400.00 | | $10.00 | $1.00 |
| 12/31/17 - 07/17/18 | | | | | |
| Four-day weeks: | $13.00 | $320.00 | 40 | $8.00 | $5.00 |
| Five-day weeks: | | $400.00 | | $10.00 | $3.00 |

Because Plaintiff was paid less than the New York minimum wage from November 1, 2017 through July 17, 2018, he has established Defendants' liability for failure to pay minimum wages under the NYLL for that time period.

### F.    Overtime Claims

Under both the FLSA and the NYLL, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)); *see also* NYLL §§ 650 *et seq.*; 12 N.Y.C.R.R. § 142-2.2.   To support "a reasonable inference" that a plaintiff worked more than forty hours in a given week, the plaintiff must provide "sufficient detail about the length and frequency" of the unpaid work, *Nakahata*, 723 F.3d at 201, and sufficiently allege some uncompensated time in excess of the 40 hours of work in a given workweek, *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013).

Plaintiff alleges that during periods of his employment he worked more than 40 hours a week and was never paid overtime wages. (Compl. ¶¶ 208, 212, 215; Barron Decl. ¶¶ 12, 14, 18, Inquest Tr. 19:25-20:5.) These allegations establish Defendant's liability for failure to pay Plaintiff overtime under both the FLSA and the NYLL during those time periods. *See Newman v. W. Bar & Lounge, Inc.*, No. 20-CV-1141 (KAM)(RER), 2021 WL 2401176, at *7 (E.D.N.Y. June 11, 2021) (plaintiff's sworn statement estimating his schedule and pay established he worked over 40 hours a week without time-and-a-half compensation subjecting defendants to liability on default).

## G.    Spread of Hours Claims

Pursuant to the Hospitality Wage Order, hospitality workers are entitled to spread of hours pay. "The spread of hours is the length of the interval between the beginning and end of an employee's workday." 12 N.Y.C.R.R. § 146-1.6(a). "On each day on which the spread of hours *exceeds* 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate," "regardless of a[n] [] employee's regular rate of pay." *Id.* at § 146-1.6(b) (emphasis added), (c).

Plaintiff alleges that from December 5, 2012, through October 31, 3017 he worked 12 hours per day, but did not receive any spread of hours pay. (Compl. ¶¶ 207, 208, 212; Barron Decl. ¶¶ 12, 14; Inquest Tr. 8:11-8:14, 18:5-18:13.) This allegation is sufficient to establish that Defendants did not comply with New York's spread of hours requirement for that period. *See Zhen Ming Chen v. Y Café Ave B Inc.*, No. 18-CV-4193 (JPO), 2019 WL 2324567, at *4 (S.D.N.Y. May 30, 2019) (finding plaintiff's "alleg[ations] that he had to work more than 10 hours every day, but [d]efendants have never paid him the extra spread-of-hours compensation" sufficient). Plaintiff was not eligible for spread of hours pay from November 1, 2017 through July 17, 2018, when he worked 10 hours per day. (*See* Inquest Tr. 19:25-20:5.)

## H.    Wage Notice and Wage Statement Claims

Plaintiff alleges violations of NYLL §§ 195(1) and 195(3), the statute's wage notice and

statement provisions.  (Compl. ¶¶ 306-313.)

Section 195(1)(a) requires employers to provide employees at the time of hiring with a wage notice containing, *inter alia,* the rate of pay, the basis thereof, and pay schedule.  Beginning April 9, 2011, employers were required to provide such notices at the time of hire and on the first of every February.  2010 Sess. L. News of N.Y. Ch. 564 (S. 8380); *see also* NYLL § 195(1)(a), *effective* Apr. 9, 2011-Dec. 28, 2014.  The provision is not retroactive, and employees hired prior to the effective date cannot recover under Section 195(1)(a).  *Ying Ying Dai v. ABNS NY Inc.*, 490 F. Supp. 3d 645, 659 (E.D.N.Y. 2020) (quoting *Remache v. Mac Hudson Grp.*, No. 14-CV-3118 (AMD) (RML), 2018 WL 4573072, at *16 (E.D.N.Y. Sept. 7, 2018), *report and recommendation adopted*, No. 14-CV-3118 (AMD) (RML), 2018 WL 4568860 (E.D.N.Y. Sept. 24, 2018)).

Plaintiff alleged he did not receive wage notice documents upon hiring or at any time during his employment.  However, because Plaintiff was hired in 2004, before the wage notice provision's effective date, he cannot recover for Defendants' failure to provide a written notice at the time of hiring.[6]

Section 195(3) requires employers to provide employees with "a statement with every payment of wages," listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked.  New wage statement violations occur every pay period in which proper wage statements are not provided.  *See* NYLL § 195(3) (employers must "furnish each employee with a statement with *every* payment of wages…") (emphasis added).  Plaintiff alleges that he was never provided with wage statements.  (Compl. ¶ 226.)  Therefore, Plaintiff's allegations

---

[6] From April 9, 2011 through February 26, 2015, employers were also required to provide annual notices on or before February 1 of each year.  *See* 2010 Sess. Law News of N.Y. ch. 564 § 3.  Employees may not, however, recover damages based on failure to provide annual notices.  *Ying Ying Dai*, 490 F. Supp. at 659-60 (collecting cases).

establish Defendants' liability for violations of NYLL § 195(3).[7]

### I.    Misappropriation of Tips

Under the NYLL, an employee can bring a claim for illegally retained tips.  N.Y. Lab. Law §§ 196-d; *see also Azeez v. Ramaiah*, No, 14 Civ. 5623 (PAE), 2015 WL 1637871 (S.D.N.Y. 2015).  Section 196-d of the NYLL provides that "[n]o employer ... shall ... retain any part of a gratuity or of any charge purported to be a gratuity for an employee." N.Y. Lab. Law § 196-d.

Plaintiff alleges that from the beginning of his employment through October 31, 2017, Defendants retained tips from the tip pool in which Plaintiff participated.  (Compl. ¶¶ 218, 222; Barron Decl. ¶¶ 15, 22; Inquest Tr. 7:3-7:5, 18:5-18:10.)  He has therefore established Defendants' liability for misappropriating his tips.

## VII.    **Damages**

### A.    Minimum Wage Damages

The following table shows Plaintiff's damages for each period of his employment in which he was paid less than the New York minimum wage:

| Time Period | New York Minimum Wage | Weekly Wage Paid | Applicable Hours per Week | Regular Hourly Rate of Pay | Hourly Under-payments | Weekly Under-payments[8] | Weeks Worked | Total Under-payments |
|---|---|---|---|---|---|---|---|---|
| 11/01/17 - 12/30/17 | | | | | | | | |
| Four-day weeks: | $11.00 | $320.00 | 40 | $8.00 | $3.00 | $120.00 | 6 | $720.00 |
| Five-day weeks: | | $400.00 | | $10.00 | $1.00 | $40.00 | 3 | $120.00 |
| 12/31/17 - 07/17/18 | | | | | | | | |
| Four-day weeks: | $13.00 | $320.00 | 40 | $8.00 | $5.00 | $200.00 | 19 | $3,800.00 |
| Five-day weeks: | | $400.00 | | $10.00 | $3.00 | $120.00 | 9 | $1,080 |
| | | | | | | | Total: | **$5,720.00** |

---

[7] *Cf. Juan Sanchez, Plaintiff, Oscar Martinez, Plaintiff, Miguel Angel Vasquez Baca, Plaintiff, Carlos Bernal, Plaintiff, Artiles Deyvi, Plaintiff, Banny Ramos, Plaintiff, Elgar Castillo, Plaintiff, v. Willie Trescly, Defendant.*, No. 19-CV-4524(KAM)(PK), 2023 WL 2473070, at *1 (E.D.N.Y. Mar. 13, 2023) (holding that "Plaintiffs lack Article III standing to bring and obtain damages for" notice and wage statement violations "because Plaintiffs fail to allege actual and concrete injuries) (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021)); *Wang v. XBB, Inc.*, No. 18-CV-7341 (PKC) (ST), 2022 WL 912592 (E.D.N.Y. Mar. 29, 2022); *Sevilla v. House of Salads One LLC*, No. 20-CV-6072 (PKC) (CLP), 2022 WL 954740 (E.D.N.Y. Mar. 30, 2022).

[8] "Weekly Underpayments" is equal to the difference between the minimum wage rate and regular hourly rate of pay multiplied by 40.

Accordingly, I respectfully recommend that Plaintiff be awarded $5,720.00 in minimum wage damages under the NYLL.

### B.    Overtime Damages

Plaintiff was also entitled to overtime wages for all hours worked over 40 at 1.5 times the greater of his regular rate of pay or the minimum wage under both the NYLL and the FLSA. *See, e.g.*, *Perez Campos*, 2018 WL 9945754, at *4, *8.

Although the FLSA and the NYLL state that "overtime wages are to be paid at the rate of one and one-half times the regular rate of pay received by an employee, the regulations promulgated pursuant to the two statutes differ with respect to the determination of the 'regular rate of pay' when an employee receives a weekly salary." *Quiroz v. Luigi's Dolceria, Inc.*, No. 14-CV-871 (VVP), 2016 WL 2869780, at *3 (E.D.N.Y. May 17, 2016). Pursuant to the FLSA, the "regular rate of pay" is computed by "dividing the salary by the number of hours which the salary is intended to compensate." *Id.* (quoting 29 C.F.R. § 778.113 (2016)). While "there is a rebuttable presumption that a weekly salary covers 40 hours[,] the employer can rebut the presumption by showing an employer-employee agreement that the salary cover a different number of hours." *Id.* (quotations omitted).

By contrast, the Hospitality Wage Order, promulgated pursuant to the NYLL, states that "when an employer fails to pay an employee an hourly rate of pay, the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." 12 N.Y.C.R.R. § 146-3.5(b); *see also Jianmin Jin & Chunyou Xie v. Shanghai Original, Inc.*, No. 16-CV-5633 (ARR)(JO), 2019 WL 3244187, at *4 (E.D.N.Y. July 19, 2019); *Romero v. Rung Charoen Sub, Inc.*, No. 16 Civ. 1239 (VMS), 2017 WL 4480758, at *10 (E.D.N.Y. Sept. 30, 2017). Unlike the FLSA and those NYLL provisions covering the non-hospitality industry, the Hospitality Order contains no mechanism for rebutting the

calculation based on a maximum 40-hour work week with evidence that the employee had an agreement with the employer to work more than 40 hours a week.

The following table shows Plaintiff's overtime damages for each period of employment in which he worked in excess of 40 hours per week:

| Time Period | Effective Hourly Rate | Hours Worked Per Week | Overtime Hours Worked per Week | Overtime Rate (1.5 x Effective Hourly Rate) | Weekly Overtime Under-payments | Number of Weeks | Total Overtime Under-payments |
|---|---|---|---|---|---|---|---|
| 12/05/12-10/31/17 | $15.00 | 72 | 32 | $22.50 | $720.00 | 256 | $184,320.00 |
| 11/01/17 - 12/30/17 | | | | | | | |
| Four-day weeks: | $11.00 | 40 | 0 | N/A | N/A | 6 | $0 |
| Five-day weeks: | | 50 | 10 | $16.50 | $165.00 | 3 | $495 |
| 12/31/17 - 07/17/18 | | | | | | | |
| Four-day weeks: | $13.00 | 40 | 0 | N/A | N/A | 19 | $0 |
| Five-day weeks: | | 50 | 10 | $19.50 | $195.00 | 9 | $1755 |
| | | | | | | **TOTAL:** | **$186,570.00** |

Accordingly, I respectfully recommend that Plaintiff be awarded $186,570.00 in unpaid overtime wages.

### C.    Spread of Hours Damages

Employees are entitled to spread of hours pay equal to "one additional hour of pay at the basic minimum hourly rate" for each day in which spread of hours exceeds 10 hours. 12 N.Y.C.R.R. § 146-1.6(a). Plaintiff is entitled to spread of hours pay every day he worked from December 5, 2012 through October 31, 2017. The following chart shows the spread of hours pay owed to Plaintiff based on the New York minimum wage in effect at the time:

| Time Period | Days per Week | Number of Weeks and Additional Days | Total Days | New York Minimum Wage | Spread of Hours Pay |
|---|---|---|---|---|---|
| 12/05/12 - 12/30/13 | 6 | 56 weeks | 336 | $7.25 | $2,402.40 |
| 12/31/13 - 12/30/14 | 6 | 52 weeks and 1 day | 313 | $8.00 | $2,504.00 |
| 12/31/14 - 12/30/15 | 6 | 52 weeks and 1 day | 313 | $8.75 | $2,738.75 |
| 12/31/15 - 12/30/16 | 6 | 52 weeks and 2 days | 314 | $9.00 | $2,826.00 |
| 12/31/16 - 10/31/17 | 6 | 43 weeks and 4 days | 262 | $11.00 | $2,882.00 |
| | | | | **Total:** | **$13,353.15** |

Accordingly, I recommend that Plaintiff be awarded $13,353.15 in spread of hours damages.

### D.    Wage Statement Damages

Under the version of § 198(1-d) in place when Plaintiff began working at the Clubs, the statutory maximum for violations of § 195(3) was $2,500.  *See* N.Y. Lab. L. § 198(1-d) (effective Apr. 9, 2011).  The statutory maximum increased to $5,000 on February 27, 2015.  *See* N.Y. Lab. L. § 198(1-d) (effective Feb. 27, 2015).  Because Plaintiff worked at the Clubs for more than twenty days after February 27, 2015, he is entitled to the higher maximum amount.  *See Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997 (DLI)(CLP), 2017 WL 5033650, at *21-22 (E.D.N.Y. Sept. 22, 2017), *R&R adopted*, Dkt. Order Oct. 18, 2017.

Violations of NYLL § 195(3) carry damages of $250 per workday, for a maximum of $5,000, along with costs and attorney's fees.  NYLL § 198(1-d).  Because Plaintiff worked for Defendants for more than 20 days after February 27, 2015 and never received wage statements, he is entitled to the maximum damages under that provisions.  *See, e.g., Jianmin Jin*, 2019 WL 3244187, at *5 (awarding $5,000 under Section 195(3) because the plaintiff worked without receiving paystubs for more than 20 days).

Accordingly, I respectfully recommend Plaintiff be awarded **$5,000** in wage statement damages.

### E.    Misappropriation of Tips

Plaintiff established Defendant's liability for misappropriating his tips.  However, Plaintiff does not provide any estimate of the amount of tips withheld, and he has not included any proposed recovery in his revised damages calculation or Proposed Default Judgment.  (Dkt. 52-13.)  Because Plaintiff does not provide such information, I respectfully recommend that no damages be awarded for misappropriation of tips.

### F.    Liquidated Damages

Under the FLSA and the NYLL, an employee may recover liquidated damages equal to the amount owed for unpaid minimum wage and overtime; under the NYLL, Plaintiffs may also recover liquidated damages for spread of hours compensation.  29 U.S.C. § 216(b); NYLL § 198(1-a).  If the employer shows that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA or NYLL, a court may decide not to award liquidated damages.  29 U.S.C. § 260; *see* NYLL § 198(1-a) (granting same good-faith exception to liquidated damages).  Because Defendants did not respond to the Motion, there is no showing of good faith, and liquidated damages are appropriate.  *See Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR)(MDG), 2015 WL 1529653, at *12 (E.D.N.Y. Mar. 31, 2015) (defaulting defendants did not show good faith).

The Second Circuit has interpreted the NYLL to preclude the award of double liquidated damages—that is, liquidated damages under both the NYLL and FLSA.  *See Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018).  Plaintiff may therefore be awarded liquidated damages pursuant to the NYLL or the FLSA and may elect the higher amount.  *See Charvac*, 2015 WL 5475531, at *6.

Accordingly, I recommend Plaintiff be awarded $205,643.15 in liquidated damages.

### G.    Prejudgment Interest

Plaintiff also seeks prejudgment interest under the NYLL.  (Pl. Mem., at 16-18.)  Prejudgment interest is available for underpayments under the NYLL, which in this case includes minimum wages, overtime wages, and spread of hours pay.  *See* NYLL § 198(1-a).  "Prejudgment interest is not available for violations of the wage statement or wage notice provisions[, or for] liquidated damages." *Ying Ying Dai v. ABNS NY Inc.*, 490 F. Supp. 3d 645, 662 (E.D.N.Y. 2020) (citations omitted).  A plaintiff may, however, seek prejudgment interest on any underpayment and also seek liquidated damages.  *See Reilly*

*v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999) ("Pre-judgment interest and liquidated damages under the Labor Law are not functional equivalents.")

In New York, prejudgment interest accrues at the statutory rate of nine percent per year.  N.Y. C.P.L.R. § 5004.  "Where [] damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." *Id.* § 5001(b).  Courts have "wide discretion in determining a reasonable date from which to award pre-judgment interest." *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994) (citation omitted).  "Most courts in this district calculate simple prejudgment interest in NYLL actions from the midpoint date of the claims through the date judgment is entered." *Perez Campos*, 2018 WL 9945754, at *8 (citing *Fermin*, 93 F.Supp.3d at 49.)  Other courts have used the midpoint between the first and last dates of the plaintiff's NYLL claims. *See, e.g., Rodriguez v. Solares Corp.,* No. 16-CV-3922 (CBA)(SMG), 2018 WL 7252949, at *11 (E.D.N.Y. Aug. 14, 2018), *R&R adopted*, 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019); *Hernandez v. NJK Contractors, Inc.*, 09-CV-4812 (RER), 2015 WL 1966355, at *51 (E.D.N.Y. May 1, 2015).

As Plaintiff's cognizable claims under the NYLL arose on December 5, 2012, and ceased on July 17, 2018, the midpoint—for purposes of calculating prejudgment interest—is September 26, 2015.

Plaintiff's combined damages eligible for prejudgment interest is $205,643.15.  Prejudgment interest on those damages at a rate of nine percent per year is $18,507.88, which results in a daily interest rate of $50.71.  Accordingly, I recommend that Plaintiff be awarded prejudgment interest of $50.71 per day from September 26, 2015 through the entry of judgment.

## H.    *Post-Judgment Interest*

Plaintiff also seeks post-judgment interest (Pl. Mem. at 18), which "shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a); *see, e.g., Fermin*, 93

F. Supp. 3d at 53.  Accordingly, I recommend that Plaintiff be granted post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

### I.    Fifteen Percent Increase Penalty if Damages not Paid within Ninety Days

Plaintiff seeks an automatic increase of fifteen percent for any unpaid amount of the judgment still pending after ninety days.  (*See* Pl. Mem. at 18-19.)  New York Labor Law provides that "any judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent."  NYLL § 198(4).  The increase applies only to damages awarded under state law.  *See Rodriguez*, 2018 WL 7252949, at *12 (recommending the fifteen-percent increase be limited to amounts "awarded exclusively under the NYLL"); *De la Cruz Casarrubias v. Surf Ave Wine & Liquor Inc.*, No. 20-CV-3003 (AMD), 2021 WL 2227977, at *13 (E.D.N.Y. May 11, 2021), *R&R adopted*, 2021 WL 2223275 (E.D.N.Y. June 2, 2021) (citing *Rodriguez* and limiting conditional post-judgment interest to damages awarded under the New York Labor Law).  Accordingly, if Defendants fail to satisfy the judgment within the stated deadlines, then Plaintiff is entitled to a fifteen percent increase in the amount of damages owed to him.

## VIII.  Attorneys' Fees and Costs

Prevailing plaintiffs are allowed to recover reasonable attorneys' fees and costs under both the FLSA and the NYLL.  *See* 29 U.S.C. § 216(b); NYLL § 663(1).

Plaintiff seeks leave to file a motion for attorneys' fees and costs within 30 days if the Court enters default judgment against Defendants.  (Pl. Mem. at 20-21.)  I respectfully recommend that this request be granted.

## IX.   **Joint and Several Liability**

When multiple defendants are found to be a plaintiff's employer, "each [d]efendant is jointly and severally liable under the FLSA and NYLL for any damages awards made in [a] [p]laintiff['s] favor." *Fermin*, 93 F. Supp. 3d at 37; *see also Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 685-86 (S.D.N.Y. 2011) (holding that plaintiff's allegations that the individual defendant "was an owner, partner, or manager" of the corporate defendant, "coupled with [d]efendants' default, suffice to . . . impose joint and several liability on each [defendant] for their respective violations of the wage laws." (quotation and citation omitted)).  I, therefore, respectfully recommends that Defendants be held jointly and severally liable for their violations of the FLSA and NYLL.

## **CONCLUSION**

Based on the foregoing, I respectfully recommend that the Motion be denied in part and granted in part.  I respectfully recommend that Plaintiff be awarded the following damages under the NYLL:

- $5,720.00 in minimum wage damages

- $186,570.00 in overtime damages

- $13,353.15 in spread of hours damages

- $5,000.00 for failure to provide wage statements

- $205,643.15 in liquidated damages

For a total of $416,286.30 in damages.

I further recommend that prejudgment interest be awarded at the rate of $50.71 from September 26, 2015 until the date of judgment, post-judgment interest thereafter, and the fifteen-percent increase penalty if damages under the NYLL are not paid within ninety days of judgment or the expiration of time to appeal.

I also recommend that Plaintiff be granted leave to file a motion for attorneys' fees and costs.

Any written objections to this Report and Recommendation must be filed within 14 days of service of this report.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation.  *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:   March 17, 2023
         Brooklyn, New York